## OTTINGER et al. v. BENNETT.

(Supreme Court, Appellate Division, First Department.　May 19, 1911.)

1. CORPORATIONS (§ 152*)—FOREIGN CORPORATIONS—ACTS OF DIRECTORS—LAW APPLICABLE.

　　The law of the state where a corporation is organized determines the legality of the acts of its directors in declaring dividends.

　　[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 152.*]

2. FRAUD (§ 30*)—PERSONS LIABLE—CORPORATE DIRECTORS.

　　A purchaser of corporate stock cannot maintain an action for deceit against a director of a corporation on the ground that a declaration of dividend by the directors of the company amounted to a representation that such dividend was paid or to be paid out of earnings and net profits, and that such dividend induced plaintiff to make the purchase, where defendant did not participate in the declaration of dividend, though he knew that the dividend was not to be paid out of the earnings or profits.

　　[Ed. Note.—For other cases, see Fraud, Dec. Dig. § 30.*]

3. CORPORATIONS (§ 317*) — INDUCING PURCHASE OF STOCK — VIOLATION OF STATUTE—DECLARATION OF DIVIDEND BY CORPORATE DIRECTORS.

　　A statute prohibiting the declaration of dividends by a corporation under certain circumstances, and providing a penalty for disobedience of the statute, creates a liability to the corporation or to creditors, and then only in the event of dissolution or insolvency of the corporation, and hence corporate directors are not liable as for deceit to one who purchased corporate stock in the belief that dividends paid by the corporation were not violative of the statute.

　　[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 317.*]

4. CORPORATIONS (§ 317*)—REPRESENTATIONS—DECLARATION OF DIVIDENDS.

　　If directors have power to declare dividends out of capital subject only to the penalty provided by the statute for the violation of its prohibition, the mere declaration of a dividend, without an indication as to the fund from which it is payable, does not amount to a representation that the dividend is to be paid out of net earnings, so as to afford a cause of action for deceit against a director in favor of one who purchased stock of the corporation in reliance on the regularity of the dividend.

　　[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 317.*]

5. CORPORATIONS (§ 317*)—INDUCING PURCHASE OF STOCK—UNLAWFUL DIVIDENDS—INTENT OF DECEPTION.

　　Where directors of a corporation in violation of statute declared a dividend payable out of capital, but the declaration was silent as to the fund from which the dividend was to be paid, the statute being intended for the protection of the corporation and its creditors, and defendant, a director, being under no duty to inform purchasers of stock that the dividend was not to be paid out of net profits, defendant's intention that

the dividend should have the effect of deceiving the public did not render him liable to a purchaser of stock as for deceit.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 317.*]

6. CORPORATIONS (§ 317*)—OFFICERS—INDUCING PURCHASE OF STOCK—DUTY TO DISCLOSE FACT.

That a director of a corporation knew that a declared dividend was to be paid from capital, and not from net earnings, and remained silent while plaintiff purchased stock in the corporation in the belief that the dividend represented a distribution of net earnings of the corporation, did not render the director liable to plaintiff as for deceit.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 317.*]

Miller and Dowling, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Marx Ottinger and others against John R. Bennett, impleaded, etc. From a judgment sustaining plaintiff's demurrer to a partial defense, defendant appeals. Reversed, and demurrer overruled, with leave to complainant to amend his complaint.

See, also, 133 App. Div. 892, 118 N. Y. Supp. 1129; 134 App. Div. 967, 119 N. Y. Supp. 1126.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Thomas D. Adams, for appellant.
Nathan Ottinger, for respondents.

INGRAHAM, P. J. Upon an appeal from a judgment sustaining a demurrer to a separate defense set up in the answer, the defendant attacks the sufficiency of the complaint, and, as I do not think the complaint alleges a cause of action, the judgment should not be affirmed.

The complaint alleges that the American Ice Company, a corporation organized under the laws of the state of New Jersey, had issued preferred and common stock, and on January 23, 1902, the board of directors of said company declared a dividend of $1 per share upon the common stock of the American Ice Company payable to stockholders of record at the close of business on February 1, 1902, which dividend was subsequently paid to the stockholders; that this dividend was not made or declared from the surplus or net profits arising from the business of the said American Ice Company, and the said dividend was never earned by the said American Ice Company; that at the time of the declaration of this dividend the statutes of the state of New Jersey provided that no corporation should make a dividend except from the surplus or net profits arising from its business, nor divide, withdraw, or in any way pay to the stockholders or any of them any part of its capital stock except according to the act, and, in case of any violation of its provisions, the directors under whose administration the same may happen should be jointly and severally liable, at any time within six years after paying such dividend, to the corporation and to its creditors, in the event of its dissolution or insolvency, to the full amount of the dividend made or capital stock so divided, withdrawn, paid out, or reduced, with interest on the same from the time such liability accrued, provided that any director who may have been

absent when the same was done, or who may have dissented from the act or resolution by which the same was done, may exonerate himself from such liability by causing his dissent to be entered at large on the minutes of the directors at the time the same was done, or forthwith after he shall have notice of the same and by causing a copy of such dissent to be published in certain newspapers. The complaint further alleges that the defendant John R. Bennett was a director of the American Ice Company between January 1, 1902, and March 1, 1902, and well knew that at the time the said dividend was declared the same had not been earned and was not declared from the surplus or net profits arising from the business of the said corporation; that the said defendants caused the fact of the declaration of the dividend to be published in the newspapers and to be disseminated among the public; and that none of the directors caused his dissent to be entered at large or otherwise on the minutes of the directors of the American Ice Company. There was no allegation that this defendant Bennett was present at the time the dividend was declared, voted for the dividend, or took any part in the action of the corporation in declaring a dividend.

It is alleged that each of the directors intended that the said declaration of the said dividend should be regarded by the general public as a representation that the said dividend had been earned and declared from the surplus or net profits arising from the business of the said American Ice Company, and it is then alleged that, at the time of the declaration of the said dividend, each of the said directors well knew that the aforesaid representations were wholly false, and that said representations were made with intent on the part of each of said directors to deceive the public and to induce the public to purchase shares of the capital stock of the American Ice Company, and that said directors conspired together for that purpose. It is also alleged: That the plaintiff, relying upon the said representations, and believing them to be true, purchased on February 13, 1902, 100 shares of the common stock of the American Ice Company; on or about March 5th, purchased 200 shares of the common stock of the American Ice Company; on or about April 28, 1902, purchased an additional 100 shares of said common stock; and on August 25, 1902, purchased a further 200 shares of the said common stock, and paid therefor the, sum of $12,675. That if the dividend mentioned in paragraph 5 of the complaint had been declared out of the surplus or net profits of the said American Ice Company, each share of the common stock would have been worth $50 per share at the time of the declaration of the said dividend mentioned. The common stock of the American Ice Company was intrinsically worthless and practically of net value. And that the market price of the said common stock subsequently "declined to a point where said market price, as well as said intrinsic value of the said stock, is practically nothing." Thus the basis of the plaintiff's cause of action is that the directors of the American Ice Company, by declaring a dividend on its common stock which was paid by the company, represented that such dividend was to be paid out of its earnings and net profits, and, without alleging that the defendant voted for

such dividend or took any part in declaring it or made any representations about it, plaintiff seeks to hold this defendant for his loss in a speculation in the stock, because the defendants knew that the dividend was not paid out of earnings or profits, but intended that it should be understood by the public that it was paid out of earnings and profits.

[1] The corporation being organized under the laws of the state of New Jersey, the legality of the acts of the directors must be determined by the laws of that state. The laws of that state prohibited the declaration of a dividend except from surplus or net profits arising from its business, and provided a penalty for a violation of this prohibition by making the directors under whose administration the same may happen jointly and severally liable to the corporation and to its creditors in the event of its dissolution or insolvency to the full amount of the dividend made or capital stock so divided. It is not alleged that this company has ever become insolvent, and the plaintiff is not a creditor. Nor does the plaintiff seek to compel the directors to pay back to the company the amount of the dividend that they distributed to the stockholders in violation of the statute. He alleges that the declaration of this dividend was a representation that it was paid out of net earnings or profits, but it is not alleged that the dividend was declared to be paid out of profits or earnings; that there was any direct representation by either the company or its directors that it was so paid; nothing but the bare allegation that a dividend was declared and paid by the company—how is not stated—and that therefore the plaintiff is entitled to recover, not the amount of the dividend or the loss that the company sustained in consequence of the dividend having been declared, but what he lost in an unfortunate speculation in the stock because he believed that the dividends had been paid out of earnings or profits.

[2] To sustain this action there must first be a representation by the person sought to be charged of a fact which was false and upon which the plaintiff relied. If no representation was made, there can certainly be no action based upon the falsity of a representation.

[3] The statute prohibiting the declaration of such a dividend provided the penalty that should follow, but that was only a liability to the corporation itself or to a creditor, and then only in the event of the dissolution or insolvency of the corporation. Nothing else could happen to these directors because of their disobedience to this statute except such a liability to the corporation or its directors.

In speaking of a domestic corporation which had declared a dividend in violation of the statutes of this state, the Court of Appeals, in People ex rel. E. G. E. Co. v. Barker, 141 N. Y. 254, 36 N. E. 196, said:

"That penalty, and the only one imposed, is that the trustees shall become liable for all debts existing and contracted during their term of office, * * * and the practical effect follows that for the security of creditors the liability of the trustees is put in the place of the impairment of capital effected by the dividends. If the trustees choose to bear that responsibility, they have power to declare and pay the dividend, though no surplus exists beyond the capital, at least until some judicial restraint intervenes to prevent."

[4] If the directors thus had power to declare a dividend out of capital subject only to the penalty provided by the New Jersey statute for a violation of its prohibition, it certainly could be no representation that the dividend was declared payable out of anything but capital by the mere declaration of the dividend. It is not alleged that this defendant or any of the directors had any stock to sell or declared this dividend for the purpose of creating a market for their stock; that they sold any stock based upon the declaration of this dividend; or that the plaintiff purchased any stock belonging to the defendants or any of them. The plaintiff saw that the dividend was declared, he assumed that it was payable out of profits, and he went into the general market and bought the stock. What he assumed to be the fact was not the fact.

[5] If, by the declaration of this dividend, there was no representation as to whether it was paid-out earnings or capital, then it seems to me the intention of the defendants was entirely immaterial.

[6] This defendant owed no duty to the plaintiff; he was not in a position whereby he was bound to inform the plaintiff or any one else that this dividend was not paid out of earnings but was paid out of capital; no duty devolved upon him to speak; and his mere silence in the face of the declaration of a dividend paid out of capital and not of earnings was not, as I look at it, a declaration or representation of any fact except that a dividend would be paid by the corporation at the time and place named. Certainly as to a defendant who had taken no part in the declaration of the dividend—and it is not alleged that this defendant did take such a part—there can be no representation upon which to base a recovery.

The plaintiff relies upon Keeler v. Seaman, 47 Misc. Rep. 292, 95 N. Y. Supp. 920, decided by Mr. Justice Scott, now a member of this court, at Special Term. That action was against an officer of the company, not a director. In that case the directors had declared a dividend which was payable out of the earnings, not, as in this case, a dividend which was merely payable out of the money of the company. But it is quite clear that the mere declaration of that dividend would not have charged the defendant, who was not a director, and the allegations of the complaint which made him liable were that he was instrumental in causing notice of the declaration of the dividend to be advertised, and that he knew that certain statements contained in the advertisement were false. It was also alleged that this defendant authorized a firm of stock brokers to state to intending purchasers of the said stock that the net earnings of the corporation amounted to more than 1 per cent. a month upon its capital stock, and that such statement was false to the knowledge of the defendant and was made with intent to deceive intending purchasers. There were also other allegations in the complaint charging, in effect, that the demurring defendant actively co-operated with the defendant and directors of the corporation to perpetrate a fraud upon possible purchasers of the company's stock by circulating, and causing to be circulated, false and misleading statements as to the financial condition of the corporation, and the decision was based upon these false representations and his

belief in the truth thereof that the complaint was sustained. There were direct representations by the demurring defendant made to stock brokers for the purpose of influencing the public to purchase stock of this corporation, and the decision was not at all based upon the fact of the mere declaration of the dividend by the corporation. It also appeared in that case that the dividend was declared to have been paid out of earnings, when in fact it was paid out of capital. These facts show that that case presents features which established that the demurring defendant had made a direct representation that the dividend was payable out of earnings, and not out of capital, and that seems to me to be the controlling difference between that case and the one now under consideration. Here there was a simple declaration of a dividend without stating out of what funds it was to be payable, except that it was payable by the corporation, and it seems to me that such a declaration of a dividend is not a declaration of any fact upon which can be predicated a claim of a false and fraudulent representation as to the method by which the corporation had acquired the money to pay the dividend, and certainly not against a director who had taken no part in declaring the dividend. As the complaint does not state a cause of action, it is not necessary to determine whether the defense demurred to is sufficient.

I think, therefore, this judgment should be reversed, with costs, and the demurrer overruled, with costs, with leave, however, to plaintiff to amend his complaint upon payment of costs in this court and in the court below.

McLAUGHLIN and SCOTT, JJ., concur.

MILLER, J. (dissenting). The appellant challenges the sufficiency of the complaint. The action is for fraud and deceit in inducing the plaintiff to purchase shares of the capital stock of the American Ice Company. The defendants were directors of said company. It is alleged that the directors declared a dividend on the common stock and caused it to be paid out of capital, there being no surplus or earnings, in violation of the statute of New Jersey, in which state said company was incorporated; that they caused the fact of the declaration of said dividend to be published in the newspapers and disseminated among the public; that well knowing the falsity thereof, and intending thereby to deceive the public and to induce them to purchase the shares of stock of said company, each of said defendants intended said declaration of dividend to be regarded as a representation that it had been earned and was declared from surplus and net profits; that in reliance thereon, and in the belief that said representation was true, the plaintiff purchased 600 shares of the said stock and was thereby damaged in a sum stated.

The plaintiff pleaded the New Jersey statute; but the action is not brought thereon. It may be assumed that the remedy given by the statute is exclusive; but an action for fraud and deceit can hardly be said to be statutory. The fact that it was unlawful to declare dividends except from surplus or the net profits arising from the conduct

of the business is an element to be considered in determining the quality of the defendants' act as a representation, and the reliance which the public might naturally be expected to place upon it as such.

It is familiar law that a fraudulent representation may be effected by conduct, by acts as well as by words, by silence when there is a duty to speak, by half-truths calculated to mislead, or by reckless statements made without knowledge. Vide Nickley v. Thomas, 22 Barb. 652; Viele v. Goss, 49 Barb. 96; March v. First Nat. Bank, 4 Hun, 466, affirmed 64 N. Y. 645; Second Nat. Bank v. Curtiss, 2 App. Div. 508, 37 N. Y. Supp. 1028, affirmed 153 N. Y. 681, 48 N. E. 1107; Devoe v. Brandt, 53 N. Y. 462; Beardsley v. Duntley, 69 N. Y. 577; Grant v. Walsh, 145 N. Y. 502, 40 N. E. 209, 45 Am. St. Rep. 626; Kountze v. Kennedy, 147 N. Y. 124, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651. It is equally well settled that the representation need not be made directly to the party injured by it (Brackett v. Griswold, 112 N. Y. 454, 20 N. E. 376), and that one who is induced to enter into a contract by the false representations of a third party may have a right of action against the latter for the wrong (Kujek v. Goldman, 150 N. Y. 176, 44 N. E. 773, 34 L. R. A. 156, 55 Am. St. Rep. 670). The principle of the decisions is that a party is answerable for what he intends to accomplish; that one who intentionally deceives another to his injury, no matter how, is accountable for the wrong; that a party is liable for misrepresentations, either by conduct or by words, made for another to act upon, if they were calculated to deceive, and if in fact they do deceive such other person into acting in reliance upon them to his injury. It is quite as easy to deceive by acts as by words, and the deed is often more effectual than the word. But the law is not so blind or so absurd as to judge an act by the means regardless of the motive.

Tested by the application of those principles, the complaint in the case at bar alleges all the essentials of an action for fraud and deceit, i. e., a representation by acts for the public, and therefore for the plaintiff, to act upon—falsity, scienter, deception, and injury. A declaration of a dividend by a going concern implies earnings from which to pay it, and the publication of the fact of such declaration is certainly calculated to induce the public to believe that the dividend has been earned and that the corporation is prosperous. If, intending the public to act thereon, the defendants had made and published a report expressly stating that the dividend declared had been earned, there would be no doubt of their liability to a person thereby deceived to his injury. The familiar cases of false prospectuses need not be cited. Why distinguish between a false affirmation and an act calculated to have the like effect; the motive and the result in each case being the same? Certainly the law makes no such distinction. We have had many illustrations in cases before us of the devices to deceive the public employed by managing directors, who misuse their positions to promote stock speculation, and the payment of dividends out of capital is a familiar one. When that is done to induce the public to purchase shares of the company and thereby to create a fictitious value, upon which the wrongdoers may trade, they should be held accountable pre-

cisely as though the like deception had been practiced by actual misstatements.

The novelty of the action need not deter us from applying settled principles of law; but the case is not entirely without precedent. Keeler v. Seaman, 47 Misc. Rep. 292, 95 N. Y. Supp. 920; Stainback v. Fernley, 8 L. J. Ch. 142, 3 Jur. 262. The latter case was decided in 1839. It should be said that those cases involved misstatements: but it was considered in each that the very act of declaring a dividend was a representation to the public that it had been earned. Perhaps Bedford v. Bagshaw, 29 L. J. (N. S.) Com. Law, 59, is more nearly analogous to this case. In that case directors procured the shares of their company to be inserted in the official list of the Stock Exchange, by a misrepresentation that two-thirds of the scrip had been paid upon; and it was held that the directors were liable to third persons who were induced to purchase shares in reliance upon the fact that they were listed.

It is not expressly alleged, though it may fairly be inferred from the facts stated, that the appellant was present at the meeting of directors when the dividend was declared. Moreover, his actual participation in the fraudulent scheme to deceive the public is alleged.

Of course, there was no representation to the plaintiff as to the condition of the company, unless the dividend was declared and the fact of its declaration published for the purpose of inducing the public to purchase the shares of the company in the belief that the dividend had been earned. The act itself, though in violation of the statute, would not give third parties a cause of action for fraud and deceit, unless done for them to act upon. To establish that the act was a representation to the plaintiff, he will have to prove the act and the fraudulent purpose as independent elements. It would be premature now to decide what proof would suffice to establish the latter element. It is sufficient for the present appeal that the complaint contains the necessary averments.

As a partial defense, the appellant alleged that a plan was devised by certain of the stockholders of the American Ice Company to reduce the losses incurred by the holders of stock through the decline in its market price, which was the organization of a holding company and the exchange of its stock for the common stock of the American Ice Company in the ratio of one to five; that the plaintiffs could have effected such an exchange and sold the stock received in exchange for a sum stated, and thereby could have reduced their loss. Of course, the stockholders did not have to take stock in a new company, and the matter pleaded is not a defense, partial or otherwise, to the plaintiff's cause of action. It may have a legitimate bearing on the value of the stock, which they were induced to purchase. If so, it can be proved, without being pleaded, as a fact relevant to the question of damages.

The interlocutory judgment should be affirmed, with costs.

DOWLING, J., concurs.